## West Side Metal Refining Company v. City of Chicago.

### Gen. No. 13,791.

LICENSES—*what not junk shop or second-hand store. Held*, from the evidence in this case, that the defendant did not conduct either a junk shop or a second-hand store, within the meaning of municipal ordinances requiring the keepers of such establishments to take out licenses.

Action to recover penalty for violation of ordinance. Error to the Municipal Court of Chicago; the Hon. JOHN C. SCOVEL, Judge, presiding. Heard in this court at the October term, 1907. Reversed and judgment here. Opinion filed April 20, 1908.

BENJAMIN E. COHEN, for plaintiff in error; H. J. ROSENBERG, of counsel.

GEORGE H. WHITE, for defendant in error; HENRY M. SELIGMAN, of counsel.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

Plaintiff in error was fined $100 for the violation of section 2040 of the Revised Municipal Code of Chicago, and has sued out this writ of error to reverse that judgment. The contention of the prosecution is that plaintiff in error, West Side Metal Refining Company, keeps a "junk shop" in Chicago, and at the time of the issuance of the summons against it was carrying on the business of a junk dealer without first having obtained a license so to do, pursuant to section 2040 *supra* of the Municipal Code. Said section 2040 is in these words.

"2040. (Doing business without a license prohib-

600 APPELLATE COURTS OF ILLINOIS.

VOL. 140.] West Side Metal Refin. Co. v. City of Chicago. .

ited.) No person shall exercise, carry on, or engage in the business of keeping a junk shop or what is commonly called a junk shop, for the purchase, sale, barter, exchange, or other dealing in or storage of rags or old rope, paper or bagging, old iron, brass, copper, tin, slush or lead, empty bottles or other junk, nor exercise, engage in, or carry on any such business at any other house or place than that designated in his license; or draw or drive, or cause to be drawn or driven, through the streets of this city, any handcart, wheelbarrow, or other car or vehicle, or use any boat or other kind of vessel, for the purpose of collecting or disposing of such articles; nor shall any person be entitled to have a cart or carts, boat or boats, or other vehicle or vehicles, to be used for the aforesaid purpose, without being first licensed by the mayor for such purpose. Every person who shall violate any of the provisions of this section shall be subject to a fine of not less than twenty-five dollars, nor more than one hundred dollars, for each offense."

The evidence develops that the West Side Metal Refining Company has its place of business at 169 Maxwell street, Chicago; that it is a dealer at wholesale in metals; that it buys old and new metals in large lots of not less than 500 pounds to carload lots; that it refines about one-fourth of all the metal it buys; that it sells its metals to foundries at wholesale; that it has no dealings with peddlers, and does not deal in old iron, old bottles, or any articles of a kindred character.

Counsel for the city of Chicago say in their brief that "a 'junk shop' is a place where junk is bought and sold." The evidence found in the abstract, against the fairness of which no complaint is made, is silent as to plaintiff in error trafficing in any articles which can be fairly said to constitute junk. The uncontradicted proof is that plaintiff in error buys and sells old and new metals and refines one-fourth of the metals which it purchases. And furthermore, that it does not deal in old iron, bottles, or anything of that kind. Counsel further say "a retail dealer is one who sells in smaller

quantities than the wholesale dealer, and who sells to the consumer,'' but we find in the record evidence, uncontradicted, that plaintiff in error is a wholesale dealer in metals; that is sells to foundries and has no dealings with peddlers. Police officer Sullivan testified that ''it does not buy any small quantities,'' and officer Seerey corroborates this statement in his evidence where he says, ''It does not buy any metals in small quantities.''

If it were material for us to decide the question mooted by the counsel for the city in their brief as to whether or not plaintiff in error was a wholesale or retail dealer, we find nothing to overcome the testimony of its president that its business was that of a wholesale dealer; nor is such statement in the slightest degree in conflict with the testimony of police officers Sullivan and Seerey that plaintiff in error did not buy metals in small quantities.

In the City of Chicago v. Reinschreiber, 121 Ill. App. 114, it was held that one who bought and sold old and new bottles exclusively was not a dealer in junk. If one who deals exclusively in old and new bottles is not a ''junk'' dealer, by what process of reasoning does one who deals in old and new metals, refining one-fourth of such metals, become a junk dealer, or the keeper of a junk store? The proposition itself would be self-refuting if it did not partake somewhat of the nature of the ludicrous. The Century Dictionary's definition of junk is: ''Worn out and discarded material in general that may be turned to some use; especially old rope, chain, iron, copper, parts of machinery and bottles gathered or bought up by tradesmen called junk dealers; hence rubbish of any kind; odds and ends.'' Surely it cannot be said that the refining of metals comes within the definition of articles ''bought up by tradesmen called junk dealers.''

In City of Duluth v. Bloom, 55 Minn. 97, the court say: ''Every junk shop is a second-hand store, but not every second-hand store is a junk shop.'' To call a corporation which has no dealings with peddlers, but re-

fines metal and sells its metal product to foundries a dealer in junk, does violence to logic and perverts the idiom of our vernacular.

Plaintiff in error has neither a junk shop nor a second-hand store.

The creating of ordinances such as the one under discussion is an exercise by the city council of the police power, and such ordinances are enacted because of the likelihood, grounded on experience, that junk may have been stolen or pilfered, and for protection against such larcenies the traffic is regulated by ordinance; and as said in City of New York v. Vanderwater, 113 N. Y. App. Div. 456, so we say: "It seems clear that the general character and scope of the business of the defendant does not fall within the description of a dealer in junk. There is a radical difference between the buyer of great masses of metal weighing tons at a time * * * and one who may buy old bottles, scraps or pieces of metal, slush, old rope and the like, which might readily be pilfered or stolen and carried away secretly to be sold by the culprit. It is the business of this character which is to be licensed."

The proof does not establish that plaintiff in error is either a dealer in junk or the keeper of a junk store. In carrying on its business without a license from the municipality of Chicago it did not violate section 2040 of its ordinance, *supra*. The fine imposed by the Municipal Court upon plaintiff in error is not warranted by the proofs, and its judgment is therefore reversed and a finding is entered here in favor of plaintiff in error, and it is discharged from the fine and prosecution.

*Reversed.*